{¶ 37} I must respectfully dissent. In its opinion, the majority states that "appellant contends that she was subjected to quid pro quo sexual harassment because she was fired one week after Stevens subjected her to sexual advances when he asked her to `go cruising' with him. We disagree." I would respectfully suggest that it is not the province of the court of appeals to agree or disagree with the facts presented in a motion for summary judgment. To the contrary, it is our job to weigh the facts most favorably to the non-moving party and determine whether reasonable minds could differ on their implication.[2] This is particularly true in an area that is as fact-sensitive as civil rights litigation.
 {¶ 38} "Ohio courts examine Title VII, ADEA, and state employmentdiscrimination claims under federal case law interpreting Title VII.[3] Title VII jurisprudence imposes upon the plaintiff the initial burden of establishing a prima facie case of discrimination.[4] The establishment of a prima facie case gives rise to a reciprocal burden on the part of the employer `to articulate some legitimate, nondiscriminatory reason' for its action.[5] If the employer carries its burden, the plaintiff must then be afforded `an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the (employer) were not its true reasons, but were a pretext for discrimination.'"[6][7]
 {¶ 39} There is no question that plaintiff in this matter established a prima facie case of sexual harassment pursuant to the McDonnellDouglas standard. Her status as a probationary employee is wholly irrelevant. To hold otherwise would to be tantamount to suggesting that sexual harassment was permissible during a probationary period. The record is replete with conduct, which, if believed, would clearly establish sexual harassment by supervisors, without regard to the status of the intended victim.
 {¶ 40} As stated by the Tenth District Court of Appeals:
 {¶ 41} "In the sexual harassment context, we must look at the totality of the circumstances surrounding the work environment in determining whether a hostile work environment existed. Appellant argued below, and insists here, that she viewed Towslee's touching incidents and sexually oriented comments as sexual harassment. The trial court appears to have viewed appellant's evidence in a light most favorable to appellee instead of appellant. * * *
 {¶ 42} "Specifically, appellee contends that, because appellant went to lunch with Towslee, * * * appellant could not have subjectively viewed Towslee's behavior as sexual harassment. We disagree. The fact that appellant attempted to work with her supervisor to improve the work environment and to take a less-than-confrontational approach should not work to discredit appellant's subjective judgment as a matter of law.When taken as a whole, and viewed in a light most favorable toappellant, the pinching, swatting, and various gestures and comments aresufficient to create an issue of fact as to whether appellant establishedthe subjective element of her sexual harassment claim."[8]
 {¶ 43} In the instant matter, a supervisor held a paycheck, propositioned a female employee in his office, and, then, discharged her when she refused his vulgar advances. Such actions could certainly qualify as sexual harassment. As justification, when surrounded by company lawyers in his deposition, the supervisor claimed the employee was drinking on the job, yet failed to produce one shred of evidence that the allegation was true. The majority notes that the employee "stressed that she never drank alcohol before or while at work." This is a classic example of a he said, she said, situation. Should it not be resolved by a trier of fact?
 {¶ 44} Was the employee in this matter a victim of sexual harassment? Was the explanation provided by the employer pretextual? I am not in a position to make these determinations, nor was the trial court. The relevant legal inquiry at this stage is whether reasonable minds could reach opposing conclusions based upon these facts. They could. As a matter of law, the granting of summary judgment in this matter was improper.
[2] Civ. R. 56(C).
[3] See Plumbers Steamfitters Commt. v. Ohio Civ. Rights Comm.
(1981), 66 Ohio St.2d 192, 196.
[4] See McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802.
[5] Id.
[6] Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248,253.
[7] Bucher v. Sibcy Cline, Inc. (2000), 137 Ohio App.3d 230,239-240.
[8] (Emphasis added.) Brentlinger v. Highlights for Children (2001),142 Ohio App.3d 25, 33-34.